Good morning, Your Honors, and may it please the Court. Good morning. Morgan Russell for the appellant, Khalil Janjua. I'll try to save three minutes for rebuttal. Your Honors, the Court should reverse the District Court's determination that issue preclusion does not bar relitigation by the DHS of the question of whether Mr. Janjua ever committed violent acts and is barred under the terrorism and admissibility bar because that issue, according to the District Court, was not, quote, actually litigated in his asylum hearing before the immigration judge. The face of Mr. Janjua's asylum statement, his application and declaration, squarely put in issue his support for the MQM. DHS's aversion to the Department of State report statement that the MQM had demonstrated willingness to use violence and intimidation. DHS counsel had that read via the interpreter to Mr. Janjua at the hearing and then questioned him about it, questioned him specifically if he had ever engaged in violence or intimidation. He said he had not. That squarely put those issues at issue to the immigration judge. I think ---- Ginsburg-Moran, I guess what my issue is, is it does seem that the way the testimony is that there seems to be a conflation or collapse between actually litigated and necessarily litigated. And that distinction matters, of course, in determining the collateral estoppel application. So I'd appreciate it if you could tell me why you think there's an actual litigation versus a necessarily litigated. Well, that's what I'm saying, pointing to the record. So like the restatement, for example, Restatement Second of Judgments, says that something is, for instance, the district court cited the restatement for saying that something is not actually litigated, where it's admitted or stipulated or it's an affirmative defense that wasn't raised. So actually litigated is in contradistinction to things that are, you know, admitted, stipulated, so very clearly not litigated and not decided. Well, it isn't completely because there's sort of situations where cases move along and there's kind of sub silentio, either acknowledgment or not raised issues, and then you get to the end and you say, well, to get to that end, it necessarily would have been litigated. And that actually is distinct from was it actually litigated. Right. I think the record here, so, you know, the restatement says something is actually litigated if by the – if it's put in issue by the pleadings or otherwise, right? This is so immigration court is not code pleading. So there wasn't but or otherwise, i.e., by the questions during cross-examination and his answers to them and his asylum application itself puts in issue these facts, whether he engaged in violence or intimidation, whether the MQM engaged in violence or intimidation. But if – but simply by raising the questions doesn't seem to me that they're necessarily decided. That's where I'm having a collision. So what is your best authority for that? Well, and we know it was necessarily decided because the statute says that I.J. can't grant him asylum unless – if this applies, right? Right. And Amarillo in the Fifth Circuit said precisely that. We know from the structure of the statute that it was necessarily decided. So I think we know – I think there's not really a – and the government doesn't dispute now that it was necessarily decided. I don't believe. The question they say is was it actually litigated. Right. But I'm saying at these points in the record, you know, this in immigration court is how it would come up, the asylum application and the declaration setting out the claim. You know, I think one area that I think is really useful for this is, you know, the government at page 26 of their brief says, oh, well, this testimony before the I.J., he just talks about distributing flyers and helping with events. So why should we assume the DHS attorney or the I.J., whose jobs it is to know and administer the I.N.A., would think that this implicates the terror bar. Right. But if you look at the later DHS decision denying his adjustment application, it's that exact evidence that they cite to say that the bar applies. This is that – I'm sorry. What was the exact evidence? I'm pointing to the later 2016 DHS decision denying his adjustment application, ER 315 to 316. It says their basis for saying he provided material support and so was barred is that you stated on your application for asylum, you joined the APMSO in 1984 and the MQM in 86. You indicated in the application you distributed pamphlets, put up posters. At your asylum hearing in August 2000, when asked what type of work you did for the MQM, you answered you organized rallies, distributed flyers. And then it concludes you are inadmissible for material support to an undesignated terrorist organization when you distributed flyers, organized meetings and rallies, hung posters, provided tent service, and started a new MQM office. It's the exact evidence that the government is now saying didn't actually litigate it before the IJ that DHS is saying shows that he's barred in its later decision. So I think if it's an issue, it's clearly an issue in the new decision. If you're really arguing that, why wouldn't we just send it back and ask for a determination as to what – whether it was actually decided? As my colleague was – as your colleague was arguing in the last case, if there's that determination, here we've got a person who is actually involved in terrorist activity by funding funds. At least that's the charge. And if that decision has been made and there's confusion in the record that he actually must have done this or he actually might have done that, would you suggest that we would send it back and ask for a determination and specificity? Well, no, because I do think it is like – Is it yes or no will be a very good answer, and then you can tell me why. No, because I do think it is like the discussion – Is it no or a yes? No. It's a no. No. Okay, why? No, you shouldn't send it back, because actually what I was saying about this in the last argument, very much like that, where the Court seemed to be expressing skepticism that the asylum applicant there should get another chance when he already had his opportunity at his hearing. Oh, this second by the apple doesn't bother me much at all. Well, but it's – I mean, it's a superposition. If your argument is correct, and this is a very, very substantial area in the evidence and there may be an issue, I don't understand why you don't want it to go back. Why wouldn't you want it to go back to the immigration? Well, it can't go back to the immigration judge, because those proceedings have been over for decades. It wouldn't go back to USCIS because this Court – you know, because that decision is also final and it's a district court proceeding challenging that decision. I don't think there's really anywhere to send it back to in that sense. And USCIS, I think the only place you could possibly try to send it back is a remand to the district court to remand to the agency for a new decision. But we know it was necessarily decided. And, you know, like I was saying, I think the fact that USCIS in its 2016 decision relies on this exact evidence from the asylum hearing, this proves the government's contention that it wasn't actually litigated there when DHS specifically asked him about whether the MQM engaged in violence or he engaged in violence. I think on that point, you know, in OE and Niren, which is discussed in the briefs from 2012 from this Court, the Court reiterated that, quote, the introduction of new evidence on a matter previously litigated is not an exception to issue preclusion unless there is previously unavailable evidence of changed circumstances, like new things that have happened. You can't just come back with and get out of issue preclusion by pointing to evidence that is historical in nature. For that, it cites Morris. But here, what happened – Of course, issue preclusion is different than collateral estoppel. Issue preclusion is the same as collateral estoppel, both res judicata and claim preclusion. I'm trying to use issue preclusion and claim preclusion. I think they're a little bit clearer. All right. So I think sort of critically, the difference in the records from the IJ hearing to the 2016 DHS adjudication, so at issue in both is the support for the MQM and whether the MQM kind of generally engaged in violence, and the State Department reports come up in both, I think from a couple different years, but for that same language of demonstrated ability. What's new in the 2016 DHS adjustment denial is that it also critically rests on previously available evidence to show the critical element of the terror bar that the MQM used weapons to engage in violence. So they cite a 1996 report from a publication called Jane's Intelligence Review. This is all at page 315 of the record. A 1996 report that they cite for the essential element that the MQM used firearms or other weapons in carrying out violence. The State Department report that was the only sort of thing averting to violence by the MQM before the IJ doesn't include any evidence on that critical issue. So the DHS just didn't put in any evidence on that. The only evidence was did, you know, it points to the Department of State report that they demonstrated willingness to use violence, but we don't know whether that violence involved weapons or not. And this Court has said that's a critical element. The statute says it. And it's not until the 2016 decision that they try to come back in and cure the fact that they didn't, you know, get to that in their first opportunity and put in this old report from 1996 they could have put in the first time. I think for the same reason you, the Court seems skeptical of sending the case in the last argument back to Immigration Court to give another bite of the apple. You wouldn't, you know, they can't do that. Issue preclusion doesn't allow you to just add new evidence that, you know, if it was new evidence that he committed, you know, engaged in some kind of material support, gave them funds in 2010, that would be totally different, right? Issue preclusion built into the doctrine is that you, it doesn't apply to bar those, you know, things that are related to new circumstances that post-state the prior decision. The government's going to argue that a collateral estoppel doesn't apply here because it wasn't actually litigated before the IJ. Assuming they still have that position as was in their brief, what would be your answer to that? As to why it was actually litigated? That it was not litigated before the IJ and therefore there can be no collateral estoppel. Well, I think that's been what I've been trying to get at sort of for the last number of minutes. The fact that his support for the group was the whole basis of his claim, the fact that DHS specifically asked him whether he, you know, pointed out that the Department of State says NQM demonstrated willingness to use violence, asked him specifically if he had engaged in violence or intimidation. He says no. And then DHS counsel, you know, says, oh, so you're different from the rest of the NQM? There's an objection, a mischaracterization of the record, because the Department of State report doesn't say that everyone in the NQM commits violence. It's a major political party in a gigantically populous country. Of course, we wouldn't think that everyone in the group does it. So it mischaracterizes the record. And then DHS just gives up on his line of questioning and moves on to another issue. But the fact that DHS counsel gave up on that line of questioning doesn't mean the issue wasn't raised. It just means that he didn't pursue it to get any fruitful evidence that would have actually shown that the bar applied. And I think this court has said in Paolo, quoting Moores, and in the 28J letter I filed, this court in Peck, which is quoted in Moores, you know, that a party bears the consequence of inadequate litigation in the original proceeding. I think the issue was certainly raised. DHS could have pursued it further. DHS could have put in this 1996 report that clarifies that the NQM actually used weapons, rather dangerous devices, in this violence. But it didn't do that. And issue of preclusion doesn't protect it from that poor strategy and poor litigation the first time around. I'll try to save the rest of my time. Thank you. Thank you. May it please the Court. Catherine Shinners on behalf of the appellees, the federal government appellees. This case is about whether the government can deny permanent residence to those who have engaged in terrorist activity, as defined by Congress. Collateral establishment should not bar the government from denying legal permanent residence status on the basis of that activity. It's true that that same conduct may also be, in certain circumstances, an exception to asylum eligibility, and that in this case an immigration judge granted asylum to Mr. Janjua. But neither of the two separate grounds for USCIS's, United States Citizenship and Immigration Services, denial of adjustment of status, were actually litigated in those previous immigration court proceedings before the immigration judge. It's important that the doctrine of collateral estoppel, or issue of preclusion, is about what was litigated and not what could have been or even should have been. Further, Congress clearly intended that the government make a separate determination of admissibility at the time of examination for adjustment of status and admission to legal permanent residence. Can you be granted asylum if you're inadmissible for this terrorist-related participation? If the IJ determines that this particular, that you have engaged in terrorist activity, then the IJ shall not grant asylum, if the IJ makes that determination. The question here is whether that... But if you're admitted for asylum, presumably you don't fall into this terrorist-related category, correct? Well, that's the question, Your Honor. That exception to asylum eligibility needed to have been litigated at the immigration court, and it was not. In order for that determination to have been made. Here, the important... Well, how would this differ from that Paolo case? Because there you're looking, well, what's the criteria for admissibility under... eligibility under 212? And here we're looking, what's your criteria for admissibility under the asylum statute, 1182? What's the difference? So, to be precise, it's not admissibility under asylum. It's whether or not there is... I understand. Certainly. But if you are admissible, that means you're not inadmissible. Do you agree with that? So, in Paolo... Let's start with that and then go back to Paolo. If you are admissible, does that mean you are not inadmissible? There are grounds of inadmissibility for which you can obtain a waiver in order to be admissible for legal permanent residence. But this case doesn't involve a waiver situation, correct? In this case, terrorism-related inadmissibility grounds cannot be waived in terms of admission for legal permanent residence. But there are various grounds of inadmissibility. But you can't... But in the asylum context, that can't be waived either, right? If the IJ makes that determination, which again gets back to whether or not the issue was actually litigated in the immigration court. There are several exceptions to eligibility for asylum. Terrorism-related inadmissibility grounds are one of those. Another exception is whether or not the asylum seeker engaged in persecution. Another exception is whether or not the application was filed in a timely manner. And that was actually addressed below. Thus, it does come back to whether or not the issue was actually litigated in the immigration court. It's important to note that the plaintiff, Mr. Jinju, is seeking to apply issue preclusion to preclude determination of issue in a separate context now, right? A separate context of legal permanent residence. In Palo, an issue here is not Mr. Jinju's asylum status. His asylum status remains. That remains. His asylum status remains. The question is whether... Well, that's an adjustment of status. Correct. Exactly. To legal permanent residence. So we're not relitigating his asylum status by denying him permanent residence status. He remains an asylee. In Palo, the precise issue was presented to a district court in a habeas litigation, the precise issue that was sought to be precluded in later litigation. And that was whether or not that particular individual was legally eligible for what was called 212C waiver of inadmissibility. That precise issue was litigated before the district court in that habeas proceeding. And what Palo held, what this court held in Palo, was that the government couldn't revisit that issue by raising new arguments as to whether he was subject to that particular waiver. And there's a lot of background as to, you know, the legal standards and the 212C relief. But the precise issue was whether or not he was eligible for 212C relief. Here, the precise issues are twofold, two separate grounds for USCIS's denial of adjustment of status. One, whether or not he provided material support to the MQM, which is a Tier 3 or undesignated terrorist organization. And, two, whether or not he solicited funds for MQM, a Tier 3 terrorist organization. Was it a Tier 3 terrorist organization at the time of asylum? At the time of his initial asylum hearings, there was no category for Tier 3 terrorist organizations. And that's in part why the explanation of, plaintiff's explanation of why this issue was litigated somewhat falls flat. Because at the time of the hearings, at the time of the testimony that was pointed to, there was no such thing as a Tier 3 terrorist organization. In 2001, the Patriot Act expanded the definition of terrorist activity to include material support to a Tier 3 terrorist organization and solicitation of funds to a Tier 3 terrorist organization in order to account for the different types of conducts that might support terrorist activity. Was this organization listed in any terrorist-related category at the time of the asylum application? It was not designated a terrorist organization. If that's the question. Right. Thank you. Let me get back a little bit and ask you, what does it take for an issue to be actually litigated? Something more than putting on evidence related to the issue, right? Certainly. What more? Some of the ways the issue could be presented is it could be presented in the pleadings or in here the notice to appear charging inadmissibility grounds. It could have been asserted in the closing argument as an actual argument for exception for eligibility and it could have been asserted. Does there have to be a finding or a judgment on that issue? In order for it to be actually litigated? Yes. No. No? Is the answer no? No. An issue can be actually litigated without it being necessary to the termination or being decided. But an issue can't be necessarily decided without having been actually litigated. Say that again. Say that again. An issue can be actually litigated. Parties can litigate an issue that doesn't end up being relevant to the final judgment on the merits. But in order for an issue to be necessarily decided, that presupposes that the issue was actually litigated. And I think that's what it comes down to in this case as well. I think something can be theoretically necessary to the termination of the merits but not actually litigated and necessarily decided. So, for example, the restatement example is the statute of limitations. So a defendant in civil litigation does not raise statute of limitations as a defense. There's evidence of record that the statute of limitations had expired at the time of filing the complaint. But it was never raised in the answer. It was never argued in summary judgment briefing. And perhaps even there's evidence where the defendant asks the witness, so you waited six years before you filed this lawsuit? But that doesn't amount to the issue having been raised and presented to the court for determination. Of course, had the statute of limitations defense been raised, it sounds like it would have been applied. But that doesn't mean that it was necessary to the termination. The same might go to issues relating to subject matter jurisdiction. Right. We've had cases on that where they say, well, they went ahead and decided the case, but that doesn't necessarily mean that they addressed the jurisdiction issue. Exactly. It doesn't mean that, for example, that the defendant is prevented from relitigating whether or not the plaintiff suffered injury or was suffering or would suffer imminent injury, which is a requirement for the case to have proceeded. So I think that's where the sticking point is in this case. There may have been a question that alluded to whether the MQM engaged in violence, but that is simply not enough to amount to presenting that issue to the immigration court, especially given that at the time that question was asked, the grounds for finding material support were much more narrow, and there was no such thing as a Tier 3 undesignated terrorist organization. So there's really no evidence submitted in the record before the court, in the administrative record before the court, that would show that the issue of whether the MQM was a terrorist organization was litigated. And, again, I want to go back to two separate grounds. Mr. Genjua doesn't even argue that there was any evidence submitted before the district court that he solicited funds for the MQM, which is a separate and independent ground for the USCIS's denial of his application for adjustment of status. Was that the first time the issue was raised in the district court? Did it come up at all in the immigration context? The question of solicitation of funds? Yeah. Yeah. The first time the issue was raised about solicitation of funds was in the denial of Mr. Genjua's adjustment of status by USCIS. And so, yes. On the solicitation of funds, was that a statutory change as a further disqualifier that was added after asylum? Or would the determination that he solicited funds at the time of the asylum application also have been a disqualifier either under the asylum statute or some other provision? So, again, this is a difficult situation because we're dealing with hearings that took place in 2000 before the law was expanded. But solicitation of funds and material support were both concepts in terrorism-related and admissibility grounds before the Patriot Act in 2001. So in 2000, at the time of the initial hearings, those were concepts that existed, but they had to be more directly in support of terrorist activity. Whereas the 2001 Patriot expanded to say that material support to or solicitation of funds on behalf of an undesignated terrorist organization constitutes a ground of inadmissibility. So, again, regardless of the law, the plaintiff's argument here is that the evidence was submitted to the immigration judge. And in this case, the evidence on that ground was not submitted to the immigration judge in any way. Also, for both grounds, as I've noted, the evidence regarding MQM's designation as a terrorist organization was not submitted in any meaningful way to the immigration court. So, again, I want to also point to the fact that this court's case law clearly holds that the burden is on the plaintiff or the party seeking preclusion, in this case, to show with certainty what was actually litigated and something was actually litigated. And doubts about the actual litigation element should be resolved against the party seeking preclusion or against the application of preclusion. The final point in the briefing is that under the doctrine of Astoria, which holds that collateral estoppel does not always apply to the decisions of administrative, adjudicative agencies or administrative agencies. In this case, collateral estoppel should not apply, even if we were to leave aside whether the issue was actually litigated, which, of course, our position is that it was not. A clear statement of Congress's intent not to apply collateral estoppel is not what is required. In Astoria, as in also this court's decision in title, it's looking at the structure of the statute and how it's written to determine whether or not it would be appropriate to apply collateral estoppel. Here, as noted in the briefing, there is a two-step process for obtaining legal permanent resident as an asylee. First, asylum is granted. And then you may then apply, after a certain amount of time, for legal permanent resident status, for admission to permanent residence. And the drafting of the statute is clear that at that time, the adjudicator of that application is to examine whether or not you were admissible on various different grounds, but to be included the terrorism-related inadmissibility grounds, which, again, that adjudicator cannot waive. I think this structure demonstrates that Congress did not intend for collateral estoppel to be applied in this context. And additionally, given the situation where the definition of terrorist activity was expanded midway through the proceedings, it does not make sense to apply the doctrine of collateral estoppel to be sort of counterfactual to apply it to the evidence that was presented at the initial asylum hearings before the immigration court. So your position is, even without a clear statement, possible, you know, from all these factors you mentioned that collateral estoppel shouldn't be applied, right, depending on how you read, you know, read the statute and the instructions over it. Now, so my question is this. That means we can decide this case on two independent bases, right? Either collateral estoppel doesn't apply to these proceedings, or two, it wasn't shown that it should be applied, right? That's correct. Which way would you go? Which is, in your estimation, which is the stronger argument? I think that you have to reach them both, right? If you determine that in these circumstances, in this context, that collateral estoppel should not apply to bar reconsideration of terrorism-related inadmissibility grounds on adjusting the status applications, then that necessarily, that's sort of a prerequisite to determining whether or not the issue was actually litigated under the factors of collateral estoppel. I believe both arguments are strong. All right. Thank you. Your Honors, I just want to highlight again what my opposing counsel said in her argument that an issue can't be necessarily decided without it being actually litigated. A necessarily decided presupposes actual litigation. That's exactly what this Court said in Henry Harmon, but the district court rejected that, but now the government seems to agree it's right. I think so, especially if that's right, then I think it's uncontested that it was necessarily decided for the same reason the Fifth Circuit said in Amarola, the same circuit the district court said below. I think Amarola from the Fifth Circuit is instructive in a couple other ways as well that go to the argument you just heard. It held that issue preclusion applied even where the original asylum proceeding was in 1999 and then the adjustment was in 2010. And that's despite even where between the two decisions there is the expansion to include the Tier 3 definition. And that's because the Fifth Circuit said what the IJ had said in his decision wasn't specifically the IJ in the decision in Amarola didn't specifically name check or sort of cite the statutory bar, but said that based on the applicant's credible testimony that he never engaged in any violence, that's all the IJ found. And the Fifth Circuit said that that finding, that statement, and the fact that he was cross-examined about whether he had engaged in violence, that precluded the question of whether the terrorism bar applied. I think we could all agree that based on DHS counsel's question and response, at the very least the kind of issue of whether he engaged in violence or intimidation, that was actually litigated. I don't think that could possibly be questioned. And so let me come back to this Court in Paolo, where I agree there's some, you know, this isn't a 212C case, so in that way Paolo is distinguishable. But the holding in Paolo followed from the rule of law, for which it quoted from Moore's Federal Practice, that if a new legal theory or factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determinant of the issue is conclusive on the issue, despite the fact that new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged. The government is now asking you to create a circuit split with Amarola in like at least two or three ways, it seems like, to say that collateral estoppel doesn't apply from an asylum hearing to adjustment adjudication, that the issue of whether someone engaged in violent acts is not close enough to the issue of whether of the specific statutory bar to be precluded, and whether a change in law the change in law would prevent issue preclusion from applying. I think Amarola was correctly decided. I don't think that those splits are warranted. Thank you. Thank you both for briefing and argument on a very interesting issue. The case just argued is submitted. Our next case for argument is United States v. Osby.
judges: Wallace, Tashima, McKeown